## DISTRICT OF COLUMBIA *v.* HUTTON.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 1338.  Argued January 12, 1892. — Decided February 1, 1892.

Section 354 of Rev. Stat. Dist. Columb., providing that " no person shall be appointed to office, or hold office in the police force [of the District of Columbia] who cannot read and write the English language, or who is not a citizen of the United States, or who shall ever have been indicted and convicted of crime; and no person shall be appointed as policeman or watchman who has not served in the army or navy of the United States and received an honorable discharge " was repealed by the act of June 11, 1878, " providing a permanent form of government for the District of Columbia."  20 Stat. 102, c. 180.

*Eckloff* v. *District of Columbia,* 135 U. S. 240, affirmed as to the point that the act of June 11, 1878, 20 Stat. 102, c. 180, supplied to the District of Columbia for the first time a permanent form of government in the nature of a constitution.

*United States* v. *Tynen,* 11 Wall. 88, quoted and applied to the points : (1) that when there are two acts on the same subject effect is to be given to both, if possible; (2) that when two acts on the same subject are repugnant, the later operates to repeal the earlier to the extent of the repugnancy; and (3) that a later act, covering the whole subject of an earlier one, and embracing new provisions, showing that it was intended as a substitute for the earlier act, operates as a repeal of that act.

When a later act operates as a repeal of an earlier act of Congress, a subsequent recognition of it by Congress as a subsisting act will not operate to prevent the repeal.

THE court stated the case as follows:

This was an action by Harry S. Hutton against the District of Columbia to recover the sum of $182.50, with interest, alleged to be due him for salary as a member of the metropolitan police force of the District, from June 6, 1890, to August 20, of the same year.

The defendant filed a special plea in bar admitting plaintiff's appointment on the police force at the salary specified in the declaration, and also his faithful performance of the duties required of him, in that position, for the time for which he

claimed pay; but setting up, by way of avoidance, that he ought not to recover, because, at the time of his appointment, he had never served in the army or navy of the United States, which service, it was alleged, was, and is, a condition precedent to legal appointment on the police force.

To this plea the plaintiff filed a demurrer which set up (1) that the statute relied upon in the plea had been repealed, and that there was no such statute in force in the District of Columbia; and (2) that the appointment of the plaintiff on the police force, and the acceptance of his services, as such officer, by the defendant, entitled him to recover for such services.

The demurrer was certified to the Supreme Court of the District in general term, to be heard there in the first instance, and, having been overruled, judgment was entered in favor of the plaintiff for the full amount sued for. The opinion of the court below, in advance of the official reports, will be found in vol. 19, Washington Law Reporter, 386. The District has prosecuted a writ of error.

The single question in the case is, whether § 354 of the Revised Statutes of the United States relating to the District of Columbia, prescribing the qualifications of persons eligible for appointment on the police force, was repealed by the act of June 11, 1878, 20 Stat. 102, c. 180.

To understand fully the nature of this question a brief summary of the legislation of Congress respecting the government of the District of Columbia, and especially with regard to the District police, since 1861, will be found useful, if not indispensable. By the act of August 6, 1861, 12 Stat. 320, c. 62, the District of Columbia was constituted a "Metropolitan Police District;" and the police affairs thereof were put under the control and management of a board of police, consisting of the mayors of Washington and Georgetown and five commissioners of police, to be appointed by the President of the United States, by and with the advice and consent of the Senate. This board was invested with plenary powers respecting the police affairs of the District, in all particulars, and the act established a complete system of police. The eighth section,

among other things, prescribed qualifications for holding any office on the police force by providing therein as follows: " No person shall be so appointed to office, or hold office in the police force aforesaid, who cannot read and write the English language, or who is not a citizen of the United States, or who shall ever have been indicted and convicted of crime."

Shortly after the close of the war, an additional qualification for the benefit of the honorably discharged soldiers and sailors of the United States who had participated in that great struggle, was prescribed for those holding office on the force. The general appropriation act of March 2, 1867, 14 Stat. c. 166, 440 457, in its first section provided that " hereafter no person shall be appointed as policeman or watchman [in the metropolitan police for the District of Columbia] who has not served in the army or navy of the United States, and received an honorable discharge."

These provisions respecting the qualifications of an officer on the police force were carried into the Revised Statutes of the United States relating to the District of Columbia, enacted at the first session of the 43d Congress, and are there embodied in § 354. That section provides as follows: " No person shall be appointed to office, or hold office in the police force, who cannot read and write the English language, or who is not a citizen of the United States, or who shall ever have been indicted and convicted of crime ; and no person shall be appointed as policeman or watchman who has not served in the Army or Navy of the United States and received an honorable discharge."

During all this period, and up till 1878, the police affairs of the District remained under the control of the metropolitan police board established by the act of 1861. In the meantime, however, the other governmental affairs of the District had undergone several changes. By the act of February 21, 1871, 16 Stat. 419, c. 62, a territorial government was established for the District, the general administration of affairs being committed to a governor and a legislative assembly. This territorial system of government, however, did not last long. The act establishing it was repealed in 1874, and the repealing

act vested the affairs of the District in a commission, consisting of three persons to be appointed by the President of the United States by and with the advice and consent of the senate. This commission was invested with large and ample powers for the administration of the general affairs of the District, but had no power or authority in matters relating to the schools or to the police. With respect, however, to the appointment and removal from office of persons employed in other capacities, and those officers themselves, it provided, in § 2, as follows: "Said commissioners are hereby authorized to abolish any office, to consolidate two or more offices, reduce the number of employés, remove from office, and make appointments to any office authorized by law." Act of June 20, 1874, 18 Stat. 116, c. 337.

Affairs remained thus until 1878. On the 11th of June of that year an act was passed entitled "An act providing a permanent form of government for the District of Columbia." 20 Stat. 102, c. 180. This act continued in force the main provisions of the act of 1874, enlarged the power and authority of the commissioners in some respects, especially with regard to the schools and the police, and retained the provision respecting officers, above quoted, from the act of 1874. Its sixth section is as follows: "That from and after the first day of July, 1878, the board of metropolitan police and the board of school trustees shall be abolished; and all the powers and duties now exercised by them shall be transferred to the said commissioners of the District of Columbia, who shall have authority to employ such officers and agents and to adopt such provisions as may be necessary to carry into execution the powers and duties devolved upon them by this act. . . ."

The court below held that the section just quoted had the effect of repealing § 354 of the Revised Statutes relating to the District, prescribing certain qualifications for officers and members of the police force, and gave to the commissioners full power and authority to appoint to such offices whoever they might choose, under such regulations as they might adopt.

*Mr. Assistant Attorney General Maury* for plaintiff in error.

The result of the decision of the court below is that the act of June 11, 1878, 20 Stat. 102, c. 180, has repealed section 354 of the Revised Statutes relating to the District of Columbia. So that, under this view, a person "who cannot read and write the English language," or who has been "indicted and convicted of crime," or "who has not served in the army or navy of the United States and received an honorable discharge," may be appointed to any position in the metropolitan police. In a word, the decision is that Congress has legislated so unwisely as to do away with all law prescribing the qualifications of members of the police force, and leave the matter to the commissioners, unreservedly. ·

· The act of 1878, which is supposed to have produced this effect, contains no words of repeal, but the court below held that there was a necessary implication in the act of an intention to repeal section 354.

. If the act of 1878 had prescribed what the qualifications for appointments to the police force should be, the intention to supplant section 354 would have been clear; but the act is silent on the subject. Upon what ground of construction can we say that the old law requiring that a policeman shall have certain qualifications is impliedly repealed by the subsequent law? There is no inconsistency between the full power over appointments and removals in the police force given to the District commissioners and the previous law requiring that a po' ceman, should read and write English, be a citizen of the United States, should not have been convicted of crime, and should have served in the army or navy and been honorably discharged therefrom.

If section 354 is repealed, then is also section 357, forbidding a member of the police force to receive, under any pretence whatever, "any present, fee or emolument for police services other than the regular salary and pay provided by this chapter, except by consent of the board of police;" and the same may be said of section 351, requiring that the members of the police force shall be required to take an oath of office, and other sections which need not be particularly mentioned.

·That Congress had no intention whatever of repealing sec-

tion 354 is conclusively shown by section 4 of the act of January 31, 1883, 22 Stat. 412, c. 41, which is in the following words : "That the commissioners may, and they are hereby, authorized to appoint not more than six privates, to be members of the police force, from among citizens of the United States who have or have not served in the Army and Navy of the United States, but who shall possess all the other qualifications prescribed by section three hundred and fifty-four of the Revised Statutes of the United States relating to the District of Columbia."

. This section is not referred to in the opinion of the learned judge of the court below. Had it been brought to the attention of the court it would, we conceive, have compelled a judgment in support of the plea. Congress, it thus appears, clearly recognized section 354 as a part of the subsisting law regulating the police force of the District as much as seven years before the so-called appointment of the defendant in error, Hutton.

Nothing is more improbable than that Congress should have harbored the purpose to deprive the police force of the District of the great advantage of being recruited from men honorably discharged from the army and navy, bringing as they do into the force the tone of the regular military service. It is a mistake to suppose that this requirement was intended to be temporary.

The case of *Eckloff* v. *District of Columbia*, 135 U. S. 240, does not conflict with our theory, because it holds that in the matter of appointments and removals from the police force the act of 1878 had superseded and repealed the previous law, which is undoubtedly correct.

But it is to be remembered that it was "the powers and duties" of the police board only that were transferred to the commissioners by section 6 of the act of 1878. Now these "powers and duties" did not extend to the subject of the qualifications of members of the police force, nor can it be said that the existence of section 354, prescribing such qualifications, is, in any just sense, an interference with or a restriction upon the appointing power of the commissioners, or is in any

way incompatible with the act of 1878. Nobody doubts that Congress may prescribe qualifications for office without at all invading the power of appointment of the President, let alone the commissioners of the District.

The appointment of Hutton being in violation of law, the District of Columbia cannot be compelled to make compensation for services rendered by him under that appointment.

*Mr. Andrew B. Duvall* for defendant in error.

MR. JUSTICE LAMAR, after stating the case, delivered the opinion of the court.

The question of the repealing effect of the act of 1878 was before us in *Eckloff* v. *District of Columbia,* 135 U. S. 240. In that case the question was, whether that statute had repealed § 355 of the Revised Statutes relating to the District of Columbia, which provided that no person should be removed from the police force except upon written charges preferred against him to the board of police, and after an opportunity should have been afforded him of being heard in his defence. The court decided that the repeal had been effected, and that the District commissioners, under the power conferred upon them by those sections of the act of 1878 to which we have referred, might summarily dismiss and remove a member or officer from the police force.

In its opinion, the court considered the effect of the merging, as it were, by the act of 1878, of the powers and duties formerly belonging to the metropolitan police board with those plenary powers over the other affairs of the District which had been vested in the commissioners by the act of 1874, and held that the commissioners, under the act of 1878, had the same unlimited and plenary power respecting the appointment and removal of police officers, as they had had under the act of 1874, and continued to have under the act of 1878, over the other affairs of the District.

The court, however, did not rest its decision and judgment upon that point alone, but went into a consideration of the

general object and purpose of the act of 1878, with respect to the government of the District, and said :

"But our conclusions are not controlled by this construction alone. The court below placed its decision on what we conceive to be the true significance of the act of 1878. As said by that court, it is to be regarded as an organic act, intended to dispose of the whole question of a government for this District. It is, as it were, a constitution for the District. It is declared by its title to be an act to provide 'a permanent form of government for the District.' The word permanent is suggestive. It implies that prior systems had been temporary and provisional. As permanent it is complete in itself. It is the system of government. The powers which are conferred are organic powers. We look to the act itself for their extent and limitations. It is not one act in a series of legislation, and to be made to fit into the provisions of the prior legislation, but is a single complete act, the outcome of previous experiments, and the final judgment of Congress as to the system of government which should obtain. It is the constitution of the District, and its grants of power are to be taken as new and independent grants, and expressing in themselves both their extent and limitations. Such was the view taken by the court below ; and such we believe is the true view to be taken of the statute." 135 U. S. 243, 244.

Under this view of the object and purposes of the act of 1878, we think the court below was correct in holding that that act superseded and repealed by implication § 354 of the Revised Statutes relating to the District of Columbia. It is true there are no express words of repeal in the act of 1878 applied to said § 354. But the whole tenor of the act shows that it was intended to supersede previous laws relating to the same subject matter, and to provide a system of government for the District complete in itself, in all respects. The language of the sixth section of the act of 1878, that the commissioners "shall have authority to employ *such officers and agents,* and to adopt such provisions as may be necessary to carry into execution the powers and duties devolved upon them by this act," clearly implies, we think, that, in the

employment of officers over whom they are given control, they may select such persons, under appropriate regulations, as they may deem suitable and competent for the discharge of the duties pertaining to such offices, without regard to their possessing the qualifications prescribed by said § 354.

Moreover, we think, the reasons actuating Congress in 1867 and in the 43d Congress, for requiring that a member of the District police should be an honorably discharged soldier or sailor, did not exist, at least in the same degree, in 1878. When this qualificational provision was first enacted, the war had not been long ended, and it was but in harmony with the general liberal policy of the government of the United States towards those who had fought in its army and navy during that conflict, that a discrimination should be made in their favor, in the matter of appointments to various places of trust in the nation's capital. Their appointment on the police force would serve also to imbue that force with at least some of the precision and attention to duty found in all well regulated military companies that have seen actual service. But in 1878, the war had been over a number of years, and those who had participated in its struggles were growing old, and were becoming less able physically to perform all the duties of a member of the police force. Under those conditions, it is entirely consistent with the policy of Congress to hold that they intended to abolish the qualificational standard orginating in the act of 1867. That standard of qualification was for the benefit, as we have said, of those who had served in the war; and to carry it along indefinitely would make it apply to those who had enlisted and been discharged in time of peace, as well as to those for whose benefit it was originally intended. As was said by the court below, "it is not likely that Congress intended to discriminate between the citizen and the soldier or sailor of a peace establishment."

We are not unmindful of the rule that repeals by implication are not favored. But there is another rule of construction equally sound and well settled which we think applies to this case. Stated in the language of this court in *United States* v. *Tynen*, 11 Wall. 88, 92, it is this: "When there are two acts

on the same subject the rule is to give effect to both if possible. But if the two are repugnant in any of their provisions, the latter act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first; and even where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act." See also *Murdock* v. *Memphis*, 20 Wall. 590, 617; *Tracy* v. *Tuffly*, 134 U. S. 206, 223; *Fisk* v. *Henarie*, 142 U. S. 459.

It is contended, however, that by the act of January 31, 1883, (22 Stat. 412, c. 41; Sup. to Rev. Stat. 2d edition, 397,) Congress recognized said § 354 as a still subsisting law, and that that consideration should compel a reversal of the judgment below. We are not impressed with this contention. The object of the act just referred to was to abolish the detective force established by § 340 of the Revised Statutes relating to the District of Columbia, and to increase the police force in certain respects. The fourth section, which is the one relied on as sustaining the view contended for, is as follows:

"That the commissioners may, and they are hereby, authorized to appoint not more than six privates, to be members of the police force, from among citizens of the United States, who have or have not served in the army and navy of the United States, but who shall possess all the other qualifications prescribed by section three hundred and fifty-four of the Revised Statutes of the United States relating to the District of Columbia."

It is manifest, however, from an inspection of this section that there was no recognition in it by Congress that said § 354 was still subsisting law. But even if Congress had supposed that that section was still the law, when, as a matter of fact, it had been repealed, it would make no difference in this consideration. *Postmaster General* v. *Early*, 12 Wheat. 136, 148; *Town of South Ottawa* v. *Perkins*, 94 U. S. 260, 270; *United States* v. *Claflin*, 97 U. S. 546, 548. The question is, *was said* § 354 *repealed by the act of* 1878? That is a judicial question, to be determined by the courts, upon a proper construction of that section and subsequent legislation upon the same subject

matter, and is not for the legislative branch of the government to determine. *Authorities last cited.* The act of January 31, 1883, did not profess to reënact the provisions of § 354, and we do not think there is anything in that act running counter to the view we have taken in this case of the repeal of that section by the act of 1878.

It is further argued that if said § 354 be considered repealed by the act of 1878, then certain other named sections of the Revised Statutes relating to the District of Columbia must also be held to be repealed, and that certain evil consequences will flow from such ruling with respect to those specified sections. That, however, is a consideration not properly involved in this case. Whether those specified sections or any others of said Revised Statutes were repealed by the act of 1878 we do not now decide. Our decision and judgment has reference solely to section 354. It will be time enough to consider other questions when they are properly before us.

*Judgment affirmed.*