**INTERSTATE COMMERCE COMMISSION,**
Plaintiff-Appellant,

v.

**SOUTHERN RAILWAY COMPANY and Central of Georgia Railroad Company,**
Defendants-Appellees.

No. 74–3588.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1976.

Bernard A. Gould, Daniel M. O'Donoghue, Daniel S. Linhardt, I. C. C., Washington, D. C., for plaintiff-appellant.

Ellsworth Hall, Jr., Macon, Ga., Estel Edward Bruce, Stuart C. Stock, Washington, D. C., James L. Tapley, So. Railway Co., Wm. H. Teasley, Washington, D. C., for defendants-appellees.

Leonard Schaitman, Neil H. Koslowe, Appellate Sec., Civ. Div., Dept. of Justice, Washington, D. C., for amicus curiae.

Before COLEMAN, GODBOLD and HILL, Circuit Judges.

COLEMAN, Circuit Judge.

The Interstate Commerce Commission appeals the dismissal of its action seeking a district court order to enjoin Southern Railway Company and Central of Georgia Railroad Company from violating certain orders issued by the Commission pursuant to 49 U.S.C. § 5(2) (1970). The United States was not a party to this enforcement action and the Commission did not obtain the consent or approval of the Attorney General to initiate it. We are primarily concerned with whether the ICC, acting under either § 5(8) or § 16(12) of the Interstate Commerce Act, 49 U.S.C.A. §§ 5(8), 16(12), may, without the aid or consent of the Attorney General of the United States, bring suit to enforce its orders in the federal district courts. The facts are not in dispute and need not be discussed.

The District Court held that the Commission may not, on its own, bring suit in a federal district court without the aid or consent of the Attorney General. We affirm the District Court.

I. *The Attorney General's Power Over Government Litigation*

■ Congress has determined that the Attorney General shall have plenary power and supervision over all government litigation, including litigation involving the regulatory agencies. 28 U.S.C. provides:

§ 516. *Conduct of litigation reserved to Department of Justice*

Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

\* \* \* \* \* \*

§ 519. *Supervision of litigation*

Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an

agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

This merely restates the traditional responsibility of the Attorney General over the conduct of all litigation on behalf of the United States and its agencies. *See* Confiscation Cases, 7 Wall. (74 U.S.) 454, 458, 19 L.Ed. 196 (1868). The principle not only centralizes responsibility for the conduct of public litigation but enables the President, through the Attorney General, to supervise the various policies of the executive branch. The alternative would allow a proliferation of policies among and within the various agencies.

The plenary power of the Attorney General over all government litigation has been supplemented by a grant of specific power over actions to enforce orders of the ICC. Chapter 157 of 28 U.S.C. provides in pertinent part:

§ 2321. *Procedure generally; process*

The procedure in the district courts in actions to enforce, suspend, enjoin, annul or set aside in whole or in part any order of the Interstate Commerce Commission other than for the payment of money or the collection of fines, penalties and forfeitures, shall be as provided in this chapter.

\*    \*    \*    \*    \*    \*

§ 2322. *United States as a party*

All actions specified in section 2321 of this title shall be brought by or against the United States. June 25, 1948, c. 646, 62 Stat. 969.

§ 2323. *Duties of Attorney General; intervenors*

The Attorney General shall represent the Government in the actions specified in section 2321 of this title and in actions under sections 20, 23, and 43 of Title 49, in the district courts, and in the Supreme Court of the United States upon appeal from the district courts.

The Interstate Commerce Commission and any party or parties in interest to the proceeding before the Commission, in which an order or requirement is made, may appear as parties of their own motion and as of right, and be represented by their counsel, in any action involving the validity of such order or requirement or any part thereof, and the interest of such party.

\*    \*    \*    \*    \*    \*

The Attorney General shall not dispose of or discontinue said action or proceeding over the objection of such party or intervenor, who may prosecute, defend, or continue said action or proceeding unaffected by the action or nonaction of the Attorney General therein. June 25, 1948, c. 646, 62 Stat. 970; May 24, 1949, c. 139, § 116, 63 Stat. 105.

In the words of the statute, the present action is one to "enforce   .   .   . any order of the Interstate Commerce Commission other than for the payment of money". All such actions "shall be brought by .   .   . the United States". The Attorney General "shall represent" the government in such actions. The ICC "may appear" as an intervenor and thereafter may continue to prosecute actions brought by the Attorney General. Since "the court must give effect to the plain and obvious meaning of the statute without reading in or reading out", *General Electric Co. v. Southern Construction Co.,* 5 Cir. 1967, 383 F.2d 135, 138, *cert. den.,* 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (1968), this is an action which can only be brought by the United States represented by the Attorney General. The history of these sections in no way detracts from this power of the Attorney General.

Prior to the enactment of the original version of 28 U.S.C. §§ 2321–2323 in 1910, the Interstate Commerce Act authorized the ICC to apply "in its own name" to the appropriate court for enforcement of its orders. Act of June 29, 1906, ch. 3591, § 5, 34 Stat. 591.[1] In order to bring the Attor-

---

1. Prior to 1910 the Interstate Commerce Act provided in pertinent part: "If any carrier fails or neglects to obey any order of the Commission, other than for the payment of money,

ney General's control over ICC matters into line with his control over other governmental litigation, Congress, in 1910, enacted the Commerce Court Act.[2] Act of June 18, 1910, ch. 309, 36 Stat. 539. This Act put into effect the procedural provisions now contained in Chapter 157 and vested initial control and responsibility over ICC orders in the Attorney General.

The new legislation created a Commerce Court with exclusive jurisdiction over "all cases for the enforcement . . . of any order of the Interstate Commerce Commission other than for the payment of money". Act of June 18, 1910, ch. 309, 36 Stat. 539. It further provided that "all cases and proceedings in the commerce court which but for this Act would be brought by or against the Interstate Commerce Commission shall be brought by or against the United States" and that in such cases the Attorney General would "have charge and control of the interests of the Government."

In order to harmonize the provisions relating to enforcement of ICC orders with the changed procedures of the Commerce Court, the Interstate Commerce Act was amended to delete the authority for the Commission to apply "in its own name" for enforcement of its orders. This removed any doubt that henceforth the ICC was without authority to initiate enforcement proceedings in its own name.

In 1911, the provisions governing the initiation of ICC enforcement suits in the Commerce Court were included in substantially identical form in the first codification of the Judicial Code. Act of March 3, 1911, ch. 231, §§ 207, 211 & 212, 36 Stat. 1148–49, 1150–51. When the Commerce Court was abolished by the Urgent Deficiencies Act of 1913,[3] Congress transferred jurisdiction theretofore vested in that court to the district courts and imposed the same procedures with respect to suits to enforce ICC orders. See *ICC v. Oregon-Washington R. R. & Navigation Co.*, 288 U.S. 14, 23, 53 S.Ct. 266, 77 L.Ed. 588 (1933). These procedural provisions appeared virtually unchanged in the 1934 & 1940 editions of the United States Code. When Title 28 was enacted into positive law in 1948, the statute was renumbered § 2322 and shortened to its present form. Rather than restricting the power of the Attorney General, the Congress has continually reasserted its intention to give the Attorney General, on behalf of the United States, exclusive control over the initiation of actions to enforce ICC orders.

## II. *Sec. 5(8) and Sec. 16(12) as Implied Exceptions to the Attorney General's Power*

### A. *Plain Meaning*

■ It will be noted, however, that Congress has expressly provided for one exception to the Attorney General's plenary power over government litigation—"except as otherwise authorized by law"—such that

---

while the same is in effect, any party injured thereby, *or the Commission in its own name,* may apply to the circuit court in the district where such carrier has its principal operating office, or in which the violation or disobedience of such order shall happen, for an enforcement of such order" (emphasis added).

2. President Taft expressed the reason for the new legislation thus:

"Under the existing law, the Interstate Commerce Commission itself initiates and defends litigation in the courts for the enforcement, or in the defense, of its orders and decrees, and for this purpose it employs attorneys who, while subject to the control of the Attorney General, act upon the initiative and under the instructions of the Commission. This blending of administrative, legis-

lative, and judicial functions tends, in my opinion, to impair the efficiency of the commission by clothing it with partisan characteristics and robbing it of the impartial judicial attitude it should occupy in passing upon questions submitted to it. In my opinion all litigation affecting the Government should be under the direct control of the Department of Justice; and I therefor recommend that all proceedings affecting orders and decrees of the Interstate Commerce Commission be brought by or against the United States *eo nomine,* and be placed in charge of an Assistant Attorney General acting under the direction of the Attorney General." H.R.Rep. No.923, 61st Cong., 2d Sess. 3 (1910).

3. Act of October 22, 1913, ch. 32, 38 Stat. 219.

when an agency is given specific authorization to proceed without the assistance or supervision of the Attorney General it may do so. 28 U.S.C. §§ 516, 519. The ICC contends, in effect, that Congress, albeit not expressly, intended to carve out an exception to the procedural limitations on government enforcement suits by enacting § 5(8)[4] to allow the ICC the right to institute suits in its own name to enforce § 5 orders. Specifically, the Commission argues that it is only by direct complaint of the Commission that the district court acquires jurisdiction to act on an allegation of a § 5 violation and that absent the complaint of the Commission the court does not have the jurisdiction to entertain a complaint by any party alleging a violation of either § 5 or an order issued by the Commission pursuant to § 5.

To support this position, the Commission points to several cases which it asserts gives the statute the same construction. *See Railroad Trainmen v. Baltimore & O. R. Co.,* 331 U.S. 519, 522, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947); *B. F. Goodrich Co. v. Northwest Industries, Inc.,* 3 Cir. 1970, 424 F.2d 1349, 1355, *cert. den.,* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50; *Ill. Central R. R. Co. v. United States,* 263 F.Supp. 421, 428 (N.D.Ill., 1966), *aff'd per curiam,* 385 U.S. 457, 87 S.Ct. 612, 17 L.Ed.2d 509 (1967). However, each of these cases was brought by private parties other than the ICC and is clearly not precedent for the statutory construction urged by the ICC. The ICC's power to initiate an action such as the one before this Court has never been at issue. *B. F. Goodrich* was a private action to enjoin an alleged violation of § 5, not a Commission action to enforce a § 5 order; *Railroad Trainmen* was a private action brought by a party other than the ICC to enforce a § 5 order; *Ill. Central* was a

private suit to set aside an ICC order. The court in each of these cases spoke only of the Commission's right to seek judicial enforcement of a § 5 order; it did not consider whether this was an independent right of action or merely a right to request a filing from the Attorney General, thus filing a complaint through the Attorney General.

Alternatively, the Commission argues that Congress repealed §§ 2321–2323 by implication when it enacted § 16(12). 49 U.S.C. § 16(12). Sec. 16(12) reads in relevant part:

> *§ 16, par. (12). Proceedings to enforce orders other than for payment of money.* If any carrier fails or neglects to obey any order of the commission other than for the payment of money, while the same is in effect, the Interstate Commerce Commission or any party injured thereby, or the United States, by its Attorney General, may apply to any district court of the United States of competent jurisdiction for the enforcement of such order.

The Commission's argument is that by the use of the word "or" Congress has explicitly given standing to any one of three plaintiffs to institute an enforcement action under § 16(12). Again the Commission cites several cases to support this construction, including *United States v. City of Jackson,* 5 Cir. 1963, 318 F.2d 1, 9; *Pacific Fruit Express v. Akron, C. & Y. R. Co.,* 355 F.Supp. 700, 709 (N.D.Cal., 1973), *aff'd,* 9 Cir. 1975, 524 F.2d 1025; *United States v. Lassiter,* 203 F.Supp. 20, 24 (W.D.La.1962), *aff'd,* 371 U.S. 10, 83 S.Ct. 21, 9 L.Ed.2d 47 (1962). Again the Commission did not institute any of these actions but appeared as an intervenor. In each case the court merely reiterated the statutory prescription that either the Commission or the Attorney Gen-

---

**4.** 49 U.S.C. § 5(8) reads:

> *Jurisdiction of injunctions, etc., against violations of section or orders.* The district courts of the United States shall have jurisdiction upon the complaint of the Commission, alleging a violation of any of the provisions of this section or disobedience of any order issued by the Commission thereunder by any per-

son, to issue such writs of injunction or other proper process, mandatory or otherwise, as may be necessary to restrain such person from violation of such provision or to compel obedience to such order. Feb. 4, 1887, c. 104, Pt. I, § 5, 24 Stat. 380; June 16, 1933, c. 91, Title II, § 202, 48 Stat. 217; Sept. 18, 1940, c. 722, Title I, § 7, 54 Stat. 905.

eral may seek judicial enforcement; it did not speak to who must initiate the action. The interaction of § 16(12) and the provisions of Chapter 157 were not considered.

It seems obvious that neither the language in § 5(8) nor the language in § 16(12) is sufficiently concrete to act as an exception to the Attorney General's broad authority over agency litigation.[5] Sec. 16(12) states only that the ICC "may apply" for enforcement of its orders. There is nothing contradictory in allowing an agency to apply, but not in its own name, for enforcement of its orders. The language simply pertains to the substantive authority of the ICC to obtain relief upon its complaint as an intervenor in enforcement procedures. Likewise, § 5(8) states only that the district court shall have jurisdiction upon the complaint of the Commission. This merely provides the ICC with the right to request that the Attorney General commence an appropriate action in federal court to enforce its orders.

### B. *Statutory Construction*

■ In addition to arguing that the plain meaning of the statute gives it standing in this case, the ICC submits that the rules of statutory construction require a reversal. The Commission argues that § 16(12) and § 5(8) were enacted subsequent to §§ 2321–2323 and, because repugnant, repeal the prior statutes by implication. Under the usual rules of statutory construction, where there is a conflict between an earlier statute and a subsequent enactment, the subsequent enactment governs. *United States v. Tynen,* 78 U.S. 88, 92, 20 L.Ed. 153 (1870); *Dist. of Columbia v. Hutton,* 143 U.S. 18, 26, 12 S.Ct. 369, 36 L.Ed. 60 (1892).

■ Another rule of statutory construction which the Commission believes requires reversal is that which prefers the more specific statute over a conflicting general statute regardless of when enacted. *United States v. Chase,* 135 U.S. 255, 260, 10 S.Ct. 756, 34 L.Ed. 117 (1890); *Panama Canal Co.*

*v. Anderson,* 5 Cir. 1963, 312 F.2d 98, 100. Since § 16(12) pertains to the enforcement of orders other than for the payment of money, and § 5(8) pertains to the enforcement of § 5 orders, either is more specific than §§ 2321–2323 and would control.

■ While these rules of statutory construction are valid in the applicable circumstances, the cardinal rule of construction is that repeals by implication are not favored. *United States v. Borden Co.,* 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181 (1939). In the absence of an affirmative showing of the intent to repeal 28 U.S.C. §§ 2321–2323, they are deemed repealed only if there exists a positive repugnancy which "cannot be reconciled". Regional Rail Reorganization Act Cases, 419 U.S. 102, 133–4, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). Two statutes on the same subject are not irreconcilable if they are capable of co-existence. See *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974).

■ Only where there is irreconcilable conflict do we need to consider which statute was subsequently enacted or which is the more specific. Since there is no irreconcilable conflict among these provisions as we have interpreted them, we do not need to look to rules of statutory construction. Congress has given the Attorney General the power to invoke the jurisdiction of the courts to enforce agency actions, but has allowed the Commission the right to request that the Attorney General exercise that power. In any proceeding filed by the Attorney General for the enforcement of orders other than for the payment of money, the Commission may intervene as of right.

The decision of the jurisdictional issue eliminates the necessity of addressing the merits of the appeal. Nevertheless, we commend the District Court for having dealt with both questions to the end that all issues might be presented on appeal, looking toward a complete and final disposition

---

5. For provisions which do so authorize an agency to appear in its own name, see Federal Trade Commission, 15 U.S.C. § 53(a); Emergency Price Control Act, *Case v. Bowles,* 327 U.S. 92, 96, 66 S.Ct. 438, 90 L.Ed. 552 (1946).

of the litigation, "in the interest of judicial economy", *Mack Trucks, Inc. v. Arrow Aluminum Castings Co.*, 5 Cir. 1975, 510 F.2d 1029, fn. 3 at page 1034.

Since the District Court was without jurisdiction of the case on the merits, its grant of the defendant's motion for judgment on the pleadings will be vacated.

On the jurisdictional issue, its judgment will be affirmed.

The case is remanded for the entry of an appropriate order.