# LOONEY v. METROPOLITAN RAILROAD CO.*

STREET RAILWAYS; NEGLIGENCE; FELLOW SERVANTS.

1. The use of each other's tracks under contract with each other, as authorized by the act of Congress of June 5, 1900 (31 Stat. at L. 270, chap. 718), authorizing certain street railway companies to contract with each other for the use of their respective routes, will be held as an adoption by such companies of the appliances of each other for the running of their cars so far as is necessary for such use; and for that use the employees of the one become the employees of the other, and all the employees become the fellow employees of each other, so that one of such employees cannot recover for injuries resulting from the negligence of another.

2. The validity of an oral contract between two railway companies, providing for the use of each other's tracks, etc., is for the court, and not for the jury.

No. 1418.   Submitted December 9, 1904.   Decided January 4, 1905.

*Master and Servant—Fellow Servants.—As to the nature of the relation existing between servants of two masters jointly engaged in the same employment, see the presentation of the authorities in editorial note to Hardy v. Shedden Co. 37 L. R. A. 61.

As to who are fellow servants in general, see the following editorial notes presenting the authorities on their respective phases of the subject: Vice principalship considered with reference to the superior rank of the negligent servant, note to Stevens v. Chamberlin, 51 L. R. A. 513; vice principalship as determined with reference to the character of the act which caused the injury, note to Lafayette Bridge Co. v. Olsen, 54 L. R. A. 33; statutory liability of employer for the negligence of employees exercising superintendence, note to Canney v. Walkeine, 58 L. R. A. 33; what servants are deemed to be in the same common employment, apart from statutes, where no questions as to vice principalship arise, note to Sofield v. Guggenheim Smelting Co. 50 L. R. A. 417; doctrine of common employment qualified as to servants working outside of scope of employment, note to Olson v. Minneapolis & St. L. R. Co. 48 L. R. A. 805; the relation of the proximate-cause doctrine to the rule of liability of a master for injury to his servant caused by combined negligence of himself and a fellow servant, note to Lutz v. Atlantic & P. R. Co. 16 L. R. A. 819; for injuries caused to one's servants by the incompetency of a fellow servant, note to Norfolk & W. R. Co. v. Hoover, 25 L. R. A. 710; train despatcher and telegraph operator as fellow servants of trainmen, notes to Little Rock & M. R. Co. v. Barry, 25 L. R. A. 386; Sofield v. Guggenheim Smelting Co. 50 L. R. A. 429; when a conductor is deemed to be a coservant of other railway employees, note to Jackson v. Norfolk & W. R. Co. 46 L. R. A. 337.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia upon the verdict of a jury directed by the court in an action to recover damages for the death of the plaintiff's intestate.        *Affirmed.*

The COURT in the opinion stated the case as follows:

This is a suit at common law instituted in the supreme court of the District of Columbia, under the statute to recover compensation for death resulting from alleged negligence of the defendants.

The appellee, the Metropolitan Railroad Company, is, or at the time of the accident here complained of, which was July 28, 1901, was a company owning and operating an electric railroad in the city of Washington, having its western terminus at the intersection of Prospect avenue and 36th street northwest, where it connected with the line of a company then known as the Washington & Great Falls Electric Railway Company, and now known as the Washington Railway & Electric Company, which line ran westward from its connection with the Metropolitan railroad to or towards the Great Falls of the Potomac river in Maryland. The cars on the Metropolitan railroad were and are propelled by an underground system of electricity; those on the Washington & Great Falls railway were and yet are propelled by what is known as the trolley or overhead electric system. Cars were run from one line to the other under an agreement believed to have been authorized or sanctioned by law; and, when cars were so transferred, the change was effected by an arrangement of machinery in pits, designated as "plow pits," constructed under the railroad tracks, which, however, required the services of a pitman, as he was called, for its adjustment to the cars as they passed over it.

The plow pit for the transfer of cars from the underground system of the Metropolitan railroad to the overhead system of the Great Falls railway was constructed in Prospect avenue a little distance west of the junction of the two roads, and therefore wholly on the line of the Great Falls railway; and it ex-

tended underground under both tracks and the space between the tracks, so that the pitman descending into it from the street could pass from one side to the other and adjust the machinery under a car on either track to change from one system to the other.

On the afternoon of July 28, 1901, James F. Looney was the pitman at this point. A car belonging to the Metropolitan Railroad Company came down 36th street on the Metropolitan railroad, rounded the curve at the junction of 36th street and Prospect avenue, ran upon the tracks of the Great Falls railway and stood over the plow-pit that has been mentioned, stopping there for the purpose of having the machinery adjusted to transfer it to the overhead system and to enable it to run west to Cabin John Bridge on the Great Falls road. As the car was rounding the curve at the junction, Looney descended into the plow-pit through the trapdoor in the south or east-bound track. Soon after the car stopped over the pit a groan was heard in the pit; the car was moved westward from over it on a descending grade over which it was passed for some little distance by the mere force of gravity, and the dead body of Looney was taken from the pit. He had been instantly killed by contact with the electric wires.

Thus far there is no dispute between the parties. The controversy arises over the manner in which the deceased received the electric shock which killed him, and whether either of the defendant companies, or both of them, are responsible for having caused his death through the negligence of their employees. The question is whether there was such negligence, or whether the death was the result of mere accident or mistake on the part of Looney himself, and, if there was negligence, whether the doctrine of the law in regard to fellow servants does not apply, inasmuch as it is claimed on behalf of the appellees that the pitman and the conductor of the car, who is chargeable with the negligence, if any there was, were both at the time of the accident employees of the Great Falls company. In this connection the contention on behalf of the appellant is that the deceased at the time was an employee of the Great Falls com-

pany, and the conductor and motorman of the car were employees of the Metropolitan Railroad Company, and that therefore the doctrine in regard to fellow servants does not apply.

At the trial the only testimony taken was on behalf of the plaintiff, and there are no bills of exception based upon the exclusion or admission of any testimony. At its conclusion the defendants moved the court to direct a verdict in their favor, which was accordingly done. It does not appear in the record upon what ground the motion was based, or upon what ground it was allowed; but counsel for the appellees state in their brief, and it seems to be admitted in the brief for the appellant, that two grounds were assigned for the motion, namely: (1) That the deceased and the conductor charged with the negligence were fellow servants of the same company, and therefore that the plaintiff could not recover; and (2) that the testimony failed to establish any negligence on the part of the conductor; and that the court below made no ruling on the second ground, but sustained the motion on the first ground.

Verdict and judgment were rendered for the defendants, from which the plaintiff has appealed.

*Mr. Franklin H. Mackey, Mr. Maurice D. Rosenberg,* and *Mr. Simon Lyon* for the appellant.

*Mr. C. C. Cole, Mr. J. J. Darlington,* and *Mr. B. W. Parker* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

There was much discussion in this case, both in briefs and oral arguments, over the effect and bearing of certain acts of Congress upon the powers of the two railroad companies here sued; and there was an effort by the appellant to show that the car of the Metropolitan Railroad Company, in connection with which Looney lost his life, was unlawfully on the track of the Washington & Great Falls Railway Company. But this discussion seems to us wholly irrelevant. The act of Congress of

June 5, 1900 (31 Stat. at L. 270, chap. 718), authorized these two railroad companies, and six other urban and suburban railroad companies in the District of Columbia, and three other suburban companies whose roads extended into the State of Maryland, to contract with each other for the use of their respective roads or routes, or any part thereof. The act was accepted, and the two companies here concerned did so contract. At all events, we find them using the roads of each other; and we must presume that they did so under the act of Congress and in accordance therewith. Using the tracks of each other, they must be held to have adopted the appliances of each other for the running of their cars so far as was necessary for such use. For that use the employees of the one became the employees of the other; and all the employees became the fellow employees of each other.

It would seem to be absurd to make the rights and duties and liabilities of these employees as to each other dependent upon the special terms of the agreements of these companies between themselves, which were never communicated to them, and which they had no opportunity to ascertain. Without attempting to go at any length into the relation of these several companies with each other, it seems to be sufficient to note that, prior to the passage of the act of June 5, 1900, there existed here a company or combination known as the Washington Traction & Electric Company, the purpose of which evidently was to gain control of various street railroad organizations in the District of Columbia, and to combine them in one system. This was sought to be accomplished, and was in fact accomplished, by the purchase of the stock of the several companies, or of a controlling interest therein. Thus the Washington Traction & Electric Company became possessed of a controlling interest in the stock of the Metropolitan Railroad Company and in the stock of the Washington & Great Falls Electric Railway Company, among others, and apparently remained so possessed and in control of these two companies at the time of the accident which gave rise to the present suit. More for the purpose of bookkeeping, it would seem, than for any other purpose, the

organizations were kept separate in name, but with the same officers in each and all the companies, as well as in the controlling company. They had all but one office, and, except for the purpose of accounting, the organization was the same for all. The employees would be shifted around, as occasion required, from one road to the other, by one and the same superintendent. The deceased, Looney, himself had been so shifted, and had only been about two weeks in the position which he occupied at the time of his death. Under the circumstances, therefore, whether the Washington Traction & Electric Company, the controlling company, be regarded as the real employer of all the employees serving on these several roads, or whether the combination of roads must be regarded as a kind of partnership employing the same employees, it is very clear that the deceased, Looney, was an employee on each and all of the roads, as occasion required; that he took the ordinary risks of such employment; and that it would be absurd to hold him as a coemployee of the conductor, when a car of the Great Falls railway was over the pit, and as a stranger to the conductor when a car of the Metropolitan railroad was over it, when he was hired to do the same service for every car.

By the act of June 5, 1900, the Washington & Great Falls Railway Company was authorized to purchase the stock, property, and franchises of any other of the railroads mentioned, and to change its name, if it was thought proper to do so; and in pursuance of this authority it purchased the stock, property, and franchises of the Metropolitan Railroad Company, and took the name of the Washington Railway & Electric Company, by which it has here been sued. The purchase and the change of name seem to have been effected after the accident which is the basis of the present suit; and they are not deemed to have affected the present suit in any way, further than in the form of the suit.

We are of opinion that there was no error in the ruling of the court below that the deceased, Looney, and the conductor of the car in connection with which the accident happened, were fellow servants; and that therefore, under the well-established

rule of law, harsh though it may appear on occasions, the deceased took upon himself the risk of the negligence of his coemployee, and cannot hold the common employer of both liable for it.

2. Error is assigned on behalf of the appellant on rulings of the trial court in reference to the contract stated to have been entered into by two roads in pursuance of the several acts of Congress, authorizing them to enter into arrangements with each other. It is claimed that the trial court should have submitted to the jury the question whether there was such a contract, and what were its terms; and that it was error on the part of the court to hold that the contract was valid, and was binding upon the employees of the parties to it. As a matter of fact no such rulings appear from the record to have been made, except in as far as they may be inferred from the action of the court in taking the case from the jury at the conclusion of the plaintiff's testimony. But there was no error in any event. The only testimony in regard to this contract was that of the plaintiff's own witness, who, indeed, was secretary of the defendant companies and a director therein, and therefore to be regarded as a hostile witness, but whose testimony, nevertheless, was clear, unequivocal, and to the point. He stated that the contract was only oral, and he gave its terms. There was nothing to submit to a jury; and there was nothing to indicate invalidity in the contract. It was certainly not invalid, because it was not committed to writing. It is difficult to see wherein there was any error here.

3. It might well be that the judgment of the trial court could be sustained on the ground that there is no sufficient testimony to show negligence on the part of the conductor or motorman of the car. The tendency of the testimony on behalf of the plaintiff is rather to show accident than negligence. The testimony of the coroner is very distinctly to that effect. He testifies that the death was caused by the contact of the electric current with the back of the deceased just beneath the shoulders, and there was no evidence of contact anywhere else. If the death had resulted from the contact of the electric current with the hands of

the deceased there might have been some reason to infer negligence on the part of the conductor or motorman; but, as the cause was decided by the trial court on the other ground, and that ground appears to be tenable, we deem it unnecessary to examine the testimony to determine whether there was sufficient to go to the jury on the subject of the negligence of the conductor or motorman of the car. The mode of the accident must remain unknown.

From what we have said it follows that the judgment appealed from must be affirmed, with costs. And it is so ordered.

*Affirmed.*

A writ of error to the Supreme Court of the United States was prayed by the appellant, and allowed February 10, 1905.