## NUSBAUM v. DISTRICT OF COLUMBIA.

Court of Appeals of District of Columbia.

Submitted January 3, 1928. Decided February 6, 1928.

No. 4631.

1. Statutes ⬅=158, 159—Repeals by implication are not favored, and statute will not be considered as repealing prior law, unless clearly repugnant thereto.

Repeals by implication are not favored, and a statute will not be considered as repealing a prior one, unless so clearly repugnant thereto as to admit of no other reasonable construction.

2. District of Columbia ⬅=23—Law annulling charter granted to market held not to have repealed grant of authority to District of Columbia to regulate market (Act March 4, 1921 [41 Stat. 1441]; Act May 20, 1870 [16 Stat. 124] § 2).

Act March 4, 1921 (41 Stat. 1441), repealing and annulling certain parts of charter and lease to Washington Market Company by Act May 20, 1870 (16 Stat. 124), held not to have repealed by implication grant of authority in section 2 of the latter act to municipal government of District of Columbia to make and enforce regulations with regard to said market as in their judgment were required for convenience, health, and safety of community.

In Error to the Police Court of the District of Columbia.

Rockward Nusbaum was convicted for a violation of a regulation of the District of Columbia relative to exposing honey for sale within jurisdiction of Center Market, without having it effectually and in a cleanly manner wrapped or covered, and he brings error. Affirmed.

C. V. Imlay and C. E. Wainwright, both of Washington, D. C., for plaintiff in error.

W. W. Bride and W. L. Fowler, both of Washington, D. C., for the District of Columbia.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. This writ of error to the police court of the District of Columbia involves the question whether the Act of March 4, 1921 (41 Stat. 1441), entitled "An act to repeal and annul certain parts of the charter and lease granted and made to the Washington Market Company by act of Congress entitled 'An act to incorporate the Washington Market Company,' approved May 20, 1870" (16 Stat. 124), repealed by implication the grant of authority in section 2 of the original act to the municipal government of the District of Columbia "to make and enforce such regulations with regard to said market and the management thereof as in their judgment the convenience, health, and safety of the community may require."

Plaintiff in error was charged with exposing for sale in his stall within the jurisdiction of Center Market honey which was not "effectually and in a cleanly manner wrapped or covered and inclosed, so as to protect it from dust and insects," in violation of a regulation of the District of Columbia. A trial resulted in conviction and fine. If the regulations of the District of Colum-

bia still were in force, the conviction should stand; otherwise, it must be set aside.

In the Act of March 4, 1921, Congress expressed an intent to cancel the lease to the Market Company "and to take over unto its own ownership, use, occupancy and control the said grounds and buildings and improvements thereon and therein now held and occupied by the said market company and its tenants. * * * Upon securing possession of said premises, and until otherwise directed by Congress, the complete possession and control of said grounds, buildings and improvements shall, for the benefit of the United States, vest in the Secretary of Agriculture, who shall first reserve so much of the grounds and space in said buildings as he may deem necessary for the use of the United States; and, after such reservation shall have been made, and until Congress shall otherwise direct, any remaining portion or portions of the said grounds, buildings or improvements may be rented by the Secretary of Agriculture to the present tenants or to any other person or persons for such rental as may be agreed upon by the parties; but, in no event, shall any part of the premises be subleased by the tenant. The Secretary of Agriculture is hereby empowered and directed to make and enforce such rules and regulations for the management and control of the said property as he may deem best for the enforcement of the provisions of said act." Sections 1, 2.

The act further provides that "the Secretary of Agriculture is hereby authorized, out of appropriations made by Congress from time to time for that purpose, to employ such persons and purchase such materials as may be essential to the operation or maintenance of said property and for the proper management and control thereof; and he shall render a detailed report to Congress at the beginning of each regular term thereof of all revenues derived from and expenditures made on the said property." Section 2.

Provision then is made in the act for the appointment of a commission to appraise the buildings and improvements of the Market Company, and, finally, authority is given the Secretary of Agriculture summarily to eject from the market and to cancel the lease or contract of storage, either or both, and without recourse to any judicial tribunal, of any person guilty of overcharging, extortion, etc.

Proceeding under the authority conferred by this act, the Secretary of Agriculture promulgated regulations, effective June 1, 1923, "for the management and control of Center Market." Under these regulations, the Chief of the Bureau of Agricultural Economics is charged with the supervision of the act and regulations, and the superintendent of the market is to have full and immediate supervision and control over the grounds, buildings and improvements. Market hours are prescribed, and in regulation 4 provision is made for "applications, leases, rentals, and payments." Paragraph 13 of regulation 4 provides:

"The willful failure on the part of any lessee to comply with any provision of the Act or any regulation, or any willful misstatement of fact in his application for the lease, will be sufficient cause for the Secretary to terminate and cancel such lease."

Regulation 6, covering "Sanitation," requires stand holders to keep their stands clean and at the close of each day to remove all rubbish and garbage, to offer for sale no article in an unwholesome and offensive condition, and to see that articles offered for sale shall be exposed in or on clean, attractive containers, trays, or counters, "and every precaution taken to keep the goods offered for sale free from contact with dust, dirt, flies, or other contamination."

Regulation 7 relates to the personal conduct of all persons in or about the market.

Regulation 8 covers cold storage furnished lessees.

Regulation 9 pertains to permits for space adjacent to the market. Among these provisions is the following: "The willful failure on the part of any permittee to comply with the provisions of the act and the regulations will forfeit his permit, and thereafter the superintendent may refuse to grant such person another permit to do business in connection with Center Market."

Regulation 10 relates to miscellaneous provisions, such as alterations or additions to stands, obstruction of aisles, control of vehicles, etc.

[1] It is familiar law that repeals by implication are not favored, and that a statute will not be considered as repealing a prior one, unless so clearly repugnant thereto as to admit of no other reasonable construction. Callan v. District of Columbia, 43 App. D. C. 338; District of Columbia v. Simpson, 47 App. D. C. 6; Wilmot v. Mudge, 103 U. S. 217, 221, 26 L. Ed. 536; Cope v. Cope, 137 U. S. 682, 686, 11 S. Ct. 222, 34 L. Ed. 832.

[2] In the original Market Act, as already noted, express authority was conferred upon the municipal government to make and enforce such regulations with regard to the

market and its management as the convenience, health, and safety of the community might require. This grant of authority was all-embracing. Siddons v. Edmonston, 42 App. D. C. 459. Evidently Congress appreciated that the health and safety of the community could best be protected through regulations of the municipal government, and hence delegated police power to that end. Since the date of this grant of power, and for a period of more than 50 years, the general police regulations of the District of Columbia for the protection of the public health have been applied to the market. We now are asked to rule that, because Congress has canceled the original lease, taken over the property, and become in effect a landlord, there must be assumed an intent on the part of Congress to clothe its agent, the Secretary of Agriculture, with the police power theretofore conferred upon the municipal government.

At the outset, it may be observed that, if such was the intent of Congress, it is strange that this was not so stated in unambiguous language. An analysis of the act of 1921, taking over the market, discloses that the authority there assumed by Congress and delegated to its agent, the Secretary of Agriculture, was that of an owner and landlord, as distinguished from the authority incident to the exercise of police power. The declared purpose of Congress was "to take over unto its own ownership, use, occupancy and control" of this property, and, upon securing possession of the same, "the complete possession and control" thereof is vested in the Secretary of Agriculture. It then is made the duty of the Secretary to reserve so much of the grounds and space as he may deem necessary for the use of the United States. The remaining portion or portions of the grounds and buildings are to be rented by him "to the present tenants or to any other person or persons for such rental as may be agreed upon by the parties. * * *" Section 2. Immediately following these provisions is a provision conferring upon the Secretary authority "to make and enforce such rules and regulations for the management and control of the said property as he may deem best for the enforcement of the provisions of said act." Section 2.

In the case of In re United States Commission, 54 App. D. C. 129, 131, 295 F. 950, 952, this court said: "By the act [of 1921] appropriation was made for the payment of the amount awarded the market company, and provision was made for the vesting of the possession and control of the grounds, buildings, and improvements in the Secretary of Agriculture for the benefit of the United States, to be rented by the Secretary, and the business continued as a market under rules and regulations to be promulgated by the Secretary of Agriculture."

In the original act, as we have seen, the grant of authority to the commissioners of the District was for the purpose of protecting the "health and safety" of the community. No such authority is conferred upon the Secretary; and such evidently is his understanding, for there is no conflict between his regulations and those of the municipal government, and both may be given effect. The Secretary, as landlord, may cancel a lease or permit, and the District authorities prosecute for a violation of its police regulation.

The judgment is affirmed, with costs.

Affirmed.