## HAZEN et al. v. WASHINGTON RAILWAY & ELECTRIC CO.

### No. 6079.

United States Court of Appeals for the District of Columbia.

Argued May 8, 1934.

Decided Oct. 1, 1934.

Rehearing Denied Dec. 1, 1934.

William A. Roberts, Sp. Asst. Corp. Counsel, of Washington, D. C., for appellants.

S. R. Bowen and E. D. Detwiler, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

PER CURIAM.

This appeal was taken from a decree of the lower court canceling certain assessments and certificates of indebtedness levied upon the Washington Railway & Electric Company by the Commissioners of the District of Columbia. The assessments were for certain amounts alleged to be due from the company for the maintenance and repairs of the Anacostia bridge, located within the District of Columbia, and occupied in part by the tracks of the company.

The case was brought by the company, as plaintiff in the lower court, seeking a decree to compel the Commissioners to cancel the assessments, and, after hearing duly had, the lower court entered a decree granting the relief thus prayed for, whereupon the present appeal was taken by the Commissioners.

The assessments in question were levied upon the company by the Commissioners under the act of April 27, 1904 (33 Stat. 372), and the certificates of indebtedness creating the liens against the property of the company were executed and recorded by authority of the same act and according to the procedure set out in the act of June 11, 1878 (20 Stat. 102, 106), entitled "An act providing a permanent form of government for the District of Columbia." The amounts of the charges against the company, the date upon which bills were rendered, the period covered by the bills, and the date upon which the corresponding certificates of indebtedness were recorded are set forth in the following tabulation:

| Amount | Date of bill | Period covered | Date of recording lien |
|---|---|---|---|
| $ 5,855.70 | Feb. 13, 1929 | Jan. 31, 1926, to Jan. 31, 1929......................... | Feb. 3, 1930 |
| 50.48 | Sept. 10, 1929 | Jan. 31, 1929, to June 30, 1929......................... | Apr. 22, 1931 |
| 1,680.57 | July 2, 1930 | June 30, 1929, to June 30, 1930......................... | Apr. 22, 1931 |
| 51,880.15 | Oct. 13, 1930 | During year 1930......................... | Apr. 22, 1931 |
| 1,052.28 | Dec. 29, 1931 | June 30, 1930, to June 30, 1931......................... | Apr. 22, 1932 |

There seems to be no question as to the accuracy or reasonableness of the charges thus made, and the testimony fairly discloses that they arise from the maintenance and repairs of the Anacostia bridge. State v. Corrigan Consol. Street Railway Co., 85 Mo. 263, 55 Am. Rep. 361; Phillips v. Stevens, 16 Mass. 238; Beach v. Crain, 2 N. Y. 93, 49 Am. Dec. 369; Ardesco Oil Co. v. Richardson, 63 Pa. 162.

By the act of April 27, 1904, supra, Congress appropriated the sum of $100,000 for the reconstruction of the Anacostia bridge under the direction of the Commissioners of the District of Columbia, to be completed within two years from July 1, 1904, at a cost not to exceed $250,000, to be paid from time to time as appropriations therefor should be made by law. The act contained the following provisions: "Provided, That the Anacostia and Potomac River Railroad Company shall pay the entire cost of the pavement between the exterior rails of its tracks on said bridge and for a distance of two feet from the said exterior rails of said tracks on each side thereof and the cost of the entire floor system supporting said pavement, to be collected in the same manner as the cost of laying pavements between the rails and tracks of street railways as provided for in section five of 'An Act providing a permanent form of government for the District of Columbia,' approved June eleventh, eighteen hundred and seventy-eight and paid into the Treasury one-half to the credit of the United States and one-half to the credit of the District of Columbia. * * * And hereafter one-half of the cost of the maintenance and repairs of this bridge shall be borne by the said railway company or companies, and shall be collected in the same manner as the cost of laying pavements between the rails and tracks of street railways, and paid into the Treasury, as provided for above."

In the act approved June 11, 1878, supra, it is provided: "That if any street railway company shall neglect or refuse to perform the work required by this act, * * * and if such company shall fail or refuse to pay the sum due from them in respect of the work done by or under the orders of the proper officials of said District * * * the Com-missioners of the District of Columbia shall issue certificates of indebtedness against the property, real or personal, of such railway company, * * * which, until they are paid, shall remain and be a lien upon the property on or against which they are issued

together with the franchise of said company. * * * "

Under the act of June 5, 1900 (31 Stat. 270), the appellee company was consolidated with the Anacostia & Potomac River Railroad Company named in the foregoing acts and its corporate name was changed to that at present used, to wit, the Washington Railway & Electric Company. The appellee company, accordingly, became responsible for the lawful obligations of the Anacostia & Potomac River Railroad Company.

It is apparent that the charges and liens levied upon the company and involved in this case depend for their validity upon the provisions of the act of April 27, 1904, supra, requiring that "hereafter one-half of the cost of the maintenance and repairs of this bridge shall be borne by the said railway company. * * * "

It is contended by the company that the foregoing act was repealed by implication by the act of March 3, 1905 (33 Stat. 893), and also that the provisions of the former act relating to the maintenance and repairs of the Anacostia bridge were superseded by those of the latter act as well as by later enactments of Congress in relation to the bridge.

The act of March 3, 1905, supra, provides in part as follows: "The reconstruction of the Anacostia Bridge authorized in the District of Columbia appropriation Act for the fiscal year nineteen hundred and five [to wit, the act of April 27, 1904] may be on the line of the existing bridge or on such other line as may be determined by the Commissioners of the District of Columbia: * * * And provided further, That in addition to the requirements heretofore made as to the payment for a portion of said work upon said bridge by the Anacostia and Potomac River Railroad Company, said company shall, when directed by the said Commissioners, deposit with the collector of taxes of the District of Columbia, to the credit of the appropriation for the reconstruction of said bridge, the sum of three thousand three hundred dollars, to defray the cost of such underfloor construction as may be necessary in order that the cars of said company may be propelled over said bridge by underfloor electrical conductors or cables, and the entire cost of maintenance of said underfloor construction shall thereafter be borne by said railroad company, and no cars shall be propelled across said bridge unless all electrical conductors or cables furnishing power for the propulsion

of the same shall be placed under floor of said bridge."

We are of the opinion, however, that the act of March 3, 1905, does not impliedly repeal the provisions of the act of April 27, 1904, above quoted, requiring the company thereafter to bear one-half of the cost of maintenance and repairs of the bridge. The two acts are not inconsistent in language or purpose and together may be enforced without interfering with one another. In the act of April 27, 1904, two separate obligations are imposed upon the street railway company. First, it is required to pay the "entire cost of the pavement between the exterior rails of its tracks on said bridge and for a distance of two feet from the said exterior rails of said tracks on each side thereof," and, second, that after the construction of the bridge the railway company should bear "one-half of the cost of the maintenance and repairs of this bridge." Both of these obligaions were to be enforced in the same manner as those arising under the act of June 11, 1878. The act of March 3, 1905, provides "that in addition to the requirements heretofore made as to the payment for a portion of said work upon said bridge by the Anacostia and Potomac River Railroad Company, said company shall, when directed by the said Commissioners, deposit with the collector of taxes of the District of Columbia, to the credit of the appropriation for the reconstruction of said bridge, the sum of three thousand three hundred dollars, to defray the cost of such underfloor construction as may be necessary in order that the cars of said company may be propelled over said bridge by underfloor electrical conductors or cables, and the entire cost of maintenance of said underfloor construction shall thereafter be borne by said railroad company, and no cars shall be propelled across said bridge unless all electrical conductors or cables furnishing power for the propulsion of the same shall be placed under floor of said bridge." The provisions of the latter act are specified as being "in addition to the requirements heretofore made as to the payment for a portion of said work upon said bridge by the Anacostia and Potomac River Railroad Company," and no reference whatever is made, either directly or indirectly, to the requirement that after the construction of the bridge, one-half of the cost of its maintenance and repairs should be borne by the railroad company. These two provisions, as aforesaid, may be concurrently enforced without conflict with one another, and the latter provision does not disclose a congressional pur-

pose of amending the former statute, except only in the matters therein specified, that is to say, the construction and payment for an underfloor method of propulsion of street cars across the bridge.

It is familiar law that repeals by implication are not favored:

"It is a well-settled rule that repeals by implication are not favored, and that when two statutes cover in whole or in part the same matter, it is the duty of the court to give effect to both unless they are irreconcilable; in other words, unless it is clear that the later act was intended to displace the provisions of the former. Henderson's Tobacco, 11 Wall. 652, 20 L. Ed. 235; District of Columbia v. Hutton, 143 U. S. 18, 12 S. Ct. 369, 36 L. Ed. 60; Frost v. Wenie, 157 U. S. 46, 15 S. Ct. 532, 39 L. Ed. 614; United States v. Healey, 160 U. S. 136, 16 S. Ct. 247, 40 L. Ed. 369." Callan v. District of Columbia, 43 App. D. C. 338, 340. See, also, McCarthy v. McCarthy, 20 App. D. C. 195; Morris v. Hitchcock, 21 App. D. C. 565; United States v. Mason, 33 App. D. C. 350; Wash. Railway & Electric Co. v. District of Columbia, 56 App. D. C. 134, 10 F.(2d) 999; Peak v. Reed, 58 App. D. C. 44, 24 F.(2d) 619; Nusbaum v. District of Columbia, 58 App. D. C. 47, 24 F.(2d) 622; Mills v. Smith (C. C. A.) 177 F. 652.

It is contended by the company that the act of 1905, even if not repealing by implication the provisions in question, nevertheless discloses a congressional purpose to supersede the former act, and to establish the latter act as the sole controlling act in relation to the subject-matter. This contention does not seem to be sound for the provisions of the second act do not disclose a congressional purpose to supersede the former act, which in effect would amount to the repeal of the former act by implication. It appears that after the reconstruction of the Anacostia bridge, the railway company in the years 1912, 1913, 1914, and 1915 without protest paid one-half of the cost of maintenance and repairs upon the bridge. It appears also that in the 70th Congress, 2d Session, a subcommittee of the Committee on Appropriations of the United States Senate undertook by amendment to the act to relieve the railway company from liability to pay annually one-half of the expense of repairing the bridge, but this effort was defeated in conference. Cong. Rec., vol. 70, p. 3950. Moreover, in the action of Congress in enacting the Joint Resolution of January 14, 1933 (47 Stat. 752), repealing the laws relating to the renewal or repairs of public bridges over which street cars operate

in the District, and substituting other and more lenient provisions in their place, the legislative understanding is apparent that the obligations of the street railway companies for charges arising from the maintenance and repairs of public bridges over which they pass, had not been repealed by implication in the prior statutes relating to them.

The railway company presents other questions, among them the statement that due notice was not given to the company of the making of the repairs in question, or the amount thereof, or the taking of the liens. We think that the question of notice, as well as that relating to the constitutionality of the acts as herein construed, is. not well taken. Newport & Cincinnati Bridge Company v. United States, 105 U. S. 470, 26 L. Ed. 1143; Metropolitan Railroad Company v. MacFarland, 20 App. D. C. 421.

The decision of the lower court is reversed with costs and the cause is remanded for further proceedings not inconsistent herewith.