Samuel **FISHER**, Mrs. Samuel Fisher, Appellants,

v.

**CAPITAL TRANSIT COMPANY,**
Appellee.

No. 13393.

United States Court of Appeals
District of Columbia Circuit.

Submitted Feb. 27, 1957.

Decided May 16, 1957.

---

Messrs. Stanley B. Frosh, Washington, D. C., and William E. Brooke, Washington, D. C., submitted on the brief for appellants.

Messrs. John P. Arness, Washington, D C., and John J. Ross, Washington, D. C., submitted on the brief for appellee, Capital Transit Company. Mr. George D. Horning, Jr., Washington, D. C., also entered an appearance for appellee, Capital Transit Company.

Before WILBUR K. MILLER, BAZELON and BURGER, Circuit Judges.

1. The wife's suit was for damages resulting from loss of consortium.

2. The alleged injuries occurred prior to August, 1955, when Congress repealed the charter and all rights of franchise granted to the Capital Transit Company. Act of August 14, 1955, c. 879, § 2, 69 Stat. 724.

BURGER, Circuit Judge.

Appellants, husband and wife, sued appellee Transit Company for damages for personal injuries sustained by the husband who, while crossing a street, fell when he caught his foot in a hole located in or near appellee's streetcar tracks.[1] The complaint alleges that appellee negligently failed to maintain its tracks and the area near the tracks in a reasonably safe condition and that the alleged existence of a hole constituted a nuisance. The District Court granted appellee's motion for summary judgment and it is from this order that appellants appeal.

Appellants contend that Capital Transit Company [2] had both a statutory and a common-law duty to pave and repair that portion of the public streets between and adjacent to its tracks, and that the liability rising from the breach of this duty extended to injured third parties as well as to the municipality. The statutory duty, appellants urge, is found in D.C. Code § 7–604 (1951 ed.), which provides in part:

"* * * When any street or avenue through which a street railway runs shall be paved, such railway company shall bear the entire cost of paving, repairs, or replacements incident to track repairs, replacements, or changes made at a time when the street or bridge is not being paved, and shall bear one-half the cost of other paving, repaving, or maintenance of paving between its track and for two feet outside the outer rails * * * *Provided further,* * * * If any street railway company shall neglect or refuse to perform the work required by this act, said pavement shall be laid between the tracks and exterior thereto of such railway by the District of Columbia * * * *"

While section 604 on its face determines only who shall bear the *cost* of paving and repairs, appellants contend that the *duty* to make repairs is an incident to the financial obligation, and that the Code manifests this construction when it provides "If any street railway company shall neglect or refuse *to perform the work required by this act*" the District of Columbia must do the work. (Emphasis added.)

■■ The District of Columbia Code, upon which appellants rely, is a codification and compilation of existing statutes. The Act authorizing the preparation and publication of this Code declares that the Code shall "establish prima facie the laws" then in force.[3] "But the very meaning of 'prima facie' is that the Code cannot prevail over the Statutes at Large when the two are inconsistent." Stephan v. United States, 1943, 319 U.S. 423, 426, 63 S.Ct. 1135, 1137, 87 L.Ed. 1490. The statutory sources of section 604, when examined in their proper historical context, leave no doubt that when Congress authorized the formulation of the Capital Transit Company it intended to impose only ultimate financial cost as distinguished from the legal duty of street maintenance upon the appellee corporation.

The Capital Transit Company was formed in 1933 when Congress passed a Joint Resolution[4] ratifying a merger agreement between the Capital Traction Company and the Washington Railway and Electric Company. The charters of these two companies,[5] like the charters of their predecessors, imposed upon the street railroads the double burden of making repairs to specified portions of the public streets and bearing the full expense thereof. Congress left no doubt who should make the repairs, as the charters affirmatively placed this duty on the street railroads in a clear and unmistakable manner. Thus, the Acts incorporating the first street railroads in what is now the District of Columbia expressly provided that the railroads had to keep their tracks, the street between their tracks, and that portion of the street two feet beyond the outer rails "at all times well paved and in good order, without expense to the [Government]." Act of May 17, 1862, c. 73, § 4, 12 Stat. 389 (incorporating the Washington and Georgetown Railroad Company); Act of July 1, 1864, c. 190, § 4, 13 Stat. 327 (incorporating the Metropolitan Railroad Company). Subsequent charters of street railroads incorporated in the District contained similar provisions that the new railroad should keep the area between and immediately adjacent to its tracks in good repair at its own expense. See, e. g., Act of June 23, 1888, c. 478, § 1, 25 Stat. 200 (incorporating the Rock Creek Railway Company); Act of July

3. Act of May 29, 1928, c. 910, § 4, 45 Stat. 1007, as amended by the Act of March 2, 1929, c. 586, § 3, 45 Stat. 1541. See 1 U.S.C. § 204(b) (1951).

4. Act of January 14, 1933, c. 10, 47 Stat. 752. The merger agreement was formulated pursuant to the authority granted by the Act of March 4, 1925, c. 527, 43 Stat. 1265. The Joint Resolution consolidated the facilities of two transportation companies under the control of a single corporation, the Capital Transit Company, and stipulated that in the future no competing line should operate without obtaining authorization from the Public Utilities Commission.

5. The Capital Traction Company was formed pursuant to the Act of March 1, 1895, c. 148, 28 Stat. 700, which authorized the Rock Creek Railway Company to purchase any connecting or intersecting street railroads and operate the purchased lines under a single management. See The Capital Traction Co. v. Offutt, 1900, 17 App.D.C. 292, 293–299, 53 L.R.A. 390. Similarly, Congress by the Act of June 5, 1900, c. 718, 31 Stat. 270, authorized the Washington and Great Falls Electric Railway Company to purchase several local street railroads, resulting in the formulation of the Washington Railway and Electric Company. See Looney v. Metropolitan Railroad Company, 1905, 24 App.D.C. 510, 515. The Congressional authorization for the formulation of the Capital Traction Company and the Washington Railway & Electric Company obligated these companies to perform all duties imposed upon their predecessors.

29, 1892, c. 322, § 1, 27 Stat. 328 (incorporating the Washington and Great Falls Electric Railway Company). This court on several occasions treated such charters as imposing maintenance duties upon the street railroads. Ross v. Washington Railway & Electric Co., 1912, 39 App.D.C. 591; District of Columbia v. Metropolitan R. Co., 1896, 8 App.D.C. 322.

When Congress in 1933 authorized the merger of two railroads into the new Capital Transit Company, the charter, unlike former acts, contained no provision affirmatively placing upon the new corporation maintenance and repair duties. Indeed, there is nothing in the Joint Resolution which indicates Congress intended the Transit Company to perform this work. On the contrary, the 1933 Act was formulated and passed with a definite understanding that the new company would be relieved of certain obligations. Cf. Hazen v. Washington Railway & Electric Co., 1934, 64 App.D.C. 57, 74 F.2d 461, certiorari denied 294 U.S. 714, 55 S.Ct. 512, 79 L.Ed. 1247. Section 14 of the Unification Agreement provided that the merger was conditioned "upon the New Company being relieved from the expense of policemen at street railway crossings and intersections, the laying of new pavement, the making of permanent improvements, renewals or repairs to the pavement of streets and public bridges * * *." In ratifying this Agreement, Congress, in section 3 of the Resolution, repealed "all provisions of law making it incumbent upon any street railway company to bear [the above expenses]." Even if it be assumed that in acquiring the franchises of its predecessors the new company succeeded to all obligations imposed by their charters,[6] it would not be reasonable to construe this general repeal provision as voiding the company's financial duty to *pay* for repairs while leaving in

full effect the duty to *make* repairs. We interpret the 1933 Merger Resolution as relieving the Capital Transit Company of the maintenance duties borne by its predecessors.

The Resolution did set forth certain costs which Congress intended the new company to bear, i. e., the entire cost of paving or replacements incident to track repairs and one-half the cost of other paving repairs or maintenance between or adjacent to its tracks. There is no indication, however, that Congress meant the performance of this work to be an incident of the expense. It would be most illogical to declare that the company pay *one-half* the cost of repair work if Congress intended the company to make the repairs and thus initially bear the *entire* expense. The Resolution contains no provision for repayment of maintenance costs from the District to the Transit Company.

■ There is no reference in the 1933 Joint Resolution to the performance of "work required by this act." This ambiguous language, contained in the 1951 D.C.Code § 7–604, has its source in an 1878 law establishing a permanent form of Government for the District of Columbia.[7] Congress included therein a section providing for the repair of public streets, and the manner of paying for this maintenance. That Act required street railroads to bear the full cost of paving and repairing portions of streets containing railroad tracks; it also provided: "That if any street railway company shall neglect or refuse to perform the work required by this act, said pavement shall be laid * * * by the District of Columbia * * *" It then specified the manner in which the District was to collect the amounts expended for this work. This Act did not specifically impose a duty upon the railroads to maintain and repair public streets; the

---

6. Section 11 of the Joint Resolution provided: " * * * That the Capital Transit Company shall exercise and succeed to all of the property, rights, and franchises of the Capital Traction and

the Washington Railway and Electric Companies * * *." Act of January 14, 1933, c. 10, 47 Stat. 761.

7. Act of June 11, 1878, c. 180, § 5, 20 Stat. 105.

quoted provision was only declaratory of those duties expressed in the railroads' charters. It was not the purpose of this Act to charge the railroads with *new* obligations or in any way to alter or supersede the controlling effect of the charters. Thus, the language pertaining to work which the street railroads were required to perform lost its validity in 1933 when the Joint Resolution repealed those laws placing the burden of making repairs upon the railroads and the new charter did not affirmatively impose that duty upon appellee. We conclude that either through inadvertence or error the compilers of the D.C.Code inserted in section 604 of Title 7 the reference first contained in the 1878 Act. This ambiguous language, implying the duty to make repairs, cannot prevail over the clearly inconsistent statutes.

We note that our result is reinforced by the terms of Congressional Appropriation Acts for the District of Columbia. Prior to the passage of the 1933 Resolution, Congress appropriated monies to be used for repairing street railways "when necessary," with the proviso that such expenditures should thereafter be collected from the railroads.[8] This is in accord with the pre-1933 situation that only when the railroads refused or failed to make necessary repairs should the District undertake to do so. Following the passage of the 1933 Merger Act, however, the appropriations were made available to the District "for the construction and repair of pavements of street railways in accordance with the provisions of the Merger Act * * *."[9] Clearly, after 1933, Congress intended the District to perform the maintenance work.

■ Congress having stated that the Capital Transit Company owed no duty to appellants to inspect, maintain and repair its tracks, there is no need to dis-cuss appellants' contention that such a duty existed at common law. The judgment of the District Court is therefore

Affirmed.

---

8. See, e. g., Acts of June 29, 1932, c. 308, 47 Stat. 354; February 23, 1931, c. 282, 46 Stat. 1387; July 3, 1930, c. 848, 46 Stat. 961.

9. See Act of June 4, 1934, c. 389, 48 Stat. 853, and subsequent Appropriation Acts for the District of Columbia.