**Joel JOSEPH and Mark Davis, Plaintiffs,**

v.

**DISTRICT OF COLUMBIA and D. C. Transit System, Inc., Defendants.**

**Civ. A. No. 832–72.**

United States District Court,
District of Columbia.

March 6, 1973.

Bruce J. Terris, Washington, D. C., for plaintiffs.

Edward L. Curry, Asst. Corp. Counsel, Washington, D. C., for defendant District of Columbia.

Curtis E. von Kann, Washington, D. C., for defendant D. C. Transit System, Inc.

## MEMORANDUM OPINION

GESELL, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment, supported by exhibits, affidavits, briefs, and after oral argument. Plaintiffs are riders of bicycles and motor scooters using the streets of the District of Columbia, who allege that the trolley tracks which the defendant D.C. Transit abandoned in the streets when it converted its transit system from trolley cars to buses, interfere with safe use of the streets, causing accidents and injuries. Originally brought as a class action, plaintiffs now proceed as individuals injured when the tracks caused them to lose control of their bicycles and scooters. They seek a declaratory judgment fixing responsibility for removal on one or both of the defendants, and injunctive relief. Their standing as aggrieved persons is not challenged.

This litigation raises fundamental questions as to who, if anyone, has responsibility to remove trolley tracks which admittedly have been abandoned, and if such responsibility exists, under what conditions shall removal occur and who shall pay the bills. The Transit Company recognizes its obligation to pay for removal if and when removal occurs. It contends, however, that it is the responsibility of the District of Columbia to undertake removal and to schedule removal. The District of Columbia, on the other hand, takes the position that it has no obligation either at common law or under statutes to remove the tracks and claims that it will get to the matter from time to time when removal can be coordinated with major highway improvement projects. Most of the trackage has long since been removed or paved over. Only some 8.2 miles of track remain exposed.

To resolve these conflicting contentions, it is necessary to examine in some detail the course of legislation affecting the problem which admittedly has left some ambiguity as to where removal responsibility rests, as to how that responsibility shall be exercised, and as to who shall pay the bills. In reviewing the legislation it is appropriate to have in mind that this municipality, like others, has always had a common-law obligation to exercise reasonable care to keep the streets in a reasonably safe condition. A municipality that fails in this obligation is of course liable in damages. District of Columbia v. Caton, 48 App.D.C. 96 (1918); Smith v. District of Columbia, 89 U.S.App.D.C 7, 189 F.2d 671 (1951). There is ample evidence before the Court that the continued exposure of trolley tracks on certain streets of our city constitutes a continuing hazard for bicycle and motorcycle riders as well as for automobile traffic under certain weather conditions.

That removal is required appears obvious. The question comes down to when and how this removal shall occur. An examination of the statutory scheme establishes that Congress did not lessen the District's common-law duty but indeed expanded it.

Historically the street railroads operating in the District had the obligation to remove abandoned track and repair pavement. *See* Act of June 11, 1878, ch. 180, § 5, 20 Stat. 106 (codified as 7 D.C.Code § 604); H.R.Rep.No.1502, 92d Cong., 2d Sess. (1972). However, this was changed when Congress in 1933 authorized the merger of two street railroads into the new Capital Transit Company. Act of Jan. 14, 1933, ch. 10, 47 Stat. 752. The 1933 Merger Act substituted a company duty to pay for pavement repairs for a duty to actually make the repairs. Fisher v. Capital Transit Co., 100 U.S.App.D.C. 385, 246 F.2d 666 (1957). Similarly, it fixed a duty to pay for track removal and repaving on the company, replacing the prior duty actually to remove and repave. Act of Jan. 14, 1933, ch. 10, § 3, 47 Stat. 759 (also 7 D.C.Code § 604).

Congress apparently contemplated that abandonment and track removal where possible would be coordinated with the highway plans of the District, and that as the Public Utilities Commission ordered abandonment of railway operations, the Commissioners of the District would then order the removal of the abandoned tracks. Then the Transit Company's duty to pay would attach. Act of July 1, 1941, ch. 271, 55 Stat. 533 (codified as 7 D.C.Code § 604a). Nothing in the practices of the company or the agencies of the District supports a different conclusion.

█ The 1956 franchise Congress granted to D.C. Transit made no changes in this basic scheme. It required the Transit Company

> to initiate and carry out a plan of gradual conversion of its street railway operations to bus operations within seven years from the date of the enactment of this Act upon terms and conditions prescribed by the [Public Utilities] Commission, with such regard as is reasonably possible when appropriate to the highway development plans of the District of Columbia and the economies implicit in coordinating the Corporation's track removal program with such plans; except that upon good and sufficient cause shown the Commission may in its discretion extend beyond seven years, the period for carrying out such conversion.

Act of July 24, 1956, ch. 669, § 7, 70 Stat. 599.

No extension was ever granted. The tracks were declared abandoned in 1962 after the trolley system was fully replaced by bus operations. Conversion within the meaning of the Act was completed at this point without the removal of any tracks. *See* H.R.Rep.No.2034, 84th Cong., 2d Sess. 14 (1956). Coordination of removal with highway plans was required only where reasonably possible. Moreover, just as the statutory scheme ended the company's duty to remove, it also ended its liability in nuisance or trespass for injuries resulting from the track's continued presence in the streets following conversion, because the tracks have remained with the tacit approval of the District. District of Columbia v. Caton, *supra.* Thus the basic contention of D.C. Transit that it has only a responsibility to pay the cost of removal when incurred is supported by the statutes and decisions.

█ The District's argument, however, that it has no remaining duties vis-a-vis track removal goes too far. A careful review of the legislative history surrounding the various official congressional pronouncements on public transportation in the District reveals that while the Transit Company's duty gradually changed to one of converting to a bus operation and paying for track removal and repaving, the District continues to have the statutory and common-law obligation ultimately to remove

these tracks. In shifting the removal duty from the Transit Company, Congress did not intend by a sleight of hand to eliminate a well-established municipal duty to maintain its streets in reasonably safe condition, thus leaving the previously protected public without legal remedy against either the city or the Transit Company.

It was always contemplated that abandoned track would be removed promptly. For an excellent summary of the relevant legislative history and the most recent congressional expression recognizing a duty on the District promptly to remove, see H.R.Rep.No.1502, 92d Cong., 2d Sess. (1972). "Good cause" could only be an excuse for the Public Utilities Commission to extend the conversion period. The 1956 Act previously quoted did not leave the District by implication the right to delay removal as long as it sees fit. To the contrary, the obligation to remove all track became fixed at the end of the conversion when the track was ordered abandoned.

Turning then to the question of appropriate relief, it should be noted that the District of Columbia presently has somewhat nebulous plans for completing its track removal program, in large part at least, by 1980. Such a leisurely, indefinite schedule, when viewed in the light of the continuing public nuisance which the tracks create, is intolerable, whether the matter is viewed in terms of the District's statutory or common-law duty. A more realistic and definitive schedule must be set and when it is set it must be adhered to. The track removal problems cannot be allowed to drift indefinitely. While removal can be accomplished by simply paving over the tracks, which in many instances has been the practice followed, the District quite sensibly would prefer physical removal. This is more expensive as well as more disruptive of traffic. Accordingly, the District, within reasonable limits, should be permitted to schedule the remaining removal, coordinated to approved highway developments.

The record indicates that in Georgetown, and perhaps elsewhere, some citizen opposition to removal may exist because the residents desire to retain ancient cobblestone paving or indeed to maintain obstacles that deter traffic. The District, of course, should consider these local attitudes in determining the best practical method for removal consonant with citizen wishes.

On or before June 30, 1973, the District shall file with the Court a firm plan for removing the remaining trolley tracks no later than June 30, 1976.

Plaintiffs' motion for summary judgment is granted against the District to the extent consistent with this Memorandum Opinion. Summary judgment will be granted in favor of D.C. Transit. Submit appropriate order within one week. The foregoing constitutes the Court's findings of fact and conclusions of law.